1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT

7

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8
9

MARIO MARTINEZ ARIAS,                    No. C 15-1136 WHA (PR)

10
              Petitioner,            **ORDER DENYING PETITION AND**
11                                   **DENYING CERTIFICATE OF**
     v.                              **APPEALABILITY**
12

WILLIAM MUNIZ, Warden,

13
              Respondent.
14     _____/

15

16                        **INTRODUCTION**

        Petitioner, a California prisoner proceeding pro se, filed this pro se petition for a writ of
17
habeas corpus pursuant to 28 U.S.C. 2254 challenging his conviction in state court.  Respondent
18
was ordered to show cause why the petition should not be granted.  Respondent has filed an
19
answer denying the petition, and petitioner has filed a traverse.  For the reasons discussed
20
below, the petition is **DENIED.**
21

22                           **STATEMENT**

23   **I.    PROCEDURAL BACKGROUND**

        Petitioner was charged in Santa Clara County Superior Court with assault with a deadly
24
weapon, auto theft, fleeing the police, and reckless driving.  On July 29, 2010, the jury found
25
him guilty on the counts of auto theft, fleeing the police, and reckless driving.  The trial court
26
declared a mistrial on the assault count because the jury hung on that count by a vote of eleven
27
to one in favor of guilt.  The trial court then found that petitioner had one prior "strike"
28
conviction under California's Three Strikes Law.  Petitioner was re-tried on the assault count
and convicted by a jury on January 31, 2012.  The trial court sentenced him to a term of 14 years

1   and four months in state prison.

2       Petitioner raised the two claims in the instant petition on direct appeal.  The California

3   Court of Appeal affirmed and the Supreme Court of California denied the petition for review.

4   The instant federal petition followed.

5   **II.    FACTUAL BACKGROUND**

6       Petitioner's convictions were based upon the finding that he was the driver of a Honda

7   that fled the police in a high speed chase shortly after midnight on August 13, 2009.  Two

8   California Highway Patrol Officers ("CHP"), Shane Canela and Officer Hyde, were in uniform

9   driving in a patrol car, and they pursued the Honda onto a highway on-ramp with their red lights

10  and sirens activated.  The Honda turned around and drove directly toward the officers' car at

11  approximately 30 miles per hour.  Officer Canela was driving, and he evaded a collision, turned

12  around and followed the Honda onto a different on ramp.  The Honda broke and accelerated,

13  and then turned towards the center divider of the highway, crossing in front of the officers' car

14  at approximately 60 miles per hour.  The patrol car collided with the back of the Honda, and the

15  Honda continued until it struck the center divider.  The officers got out of their car, and Canela

16  chased the Honda driver on foot across the other side of the highway and down a steep

17  embankment.  The driver climbed over a fence and ran across a lot that was lighted before

18  disappearing around a corner. Canela returned to the Honda, where he and Hyde found

19  petitioner's cellphone and several bottles of cold beer in a Safeway bag.  They discovered the

20  Honda was stolen, and went to a nearby Safeway and viewed surveillance tape from that

21  evening.  They each identified a man appearing on the tape shortly before the chase as the

22  Honda driver.  Another officer  called up a photograph on his computer of petitioner.  Hyde and

23  Canela both identified him as the Honda driver and the man in the surveillance video.  Later that

24  day, a different CHP Officer arrested petitioner at his home at the address where the cellphone

25  was registered.

26      Petitioner testified in his defense that he was not the driver of the Honda.  He testified

27  that he was with his girlfriend, Aurora Valenzuela, at the time of the incident.  He was the

28  person buying beer at the Safeway on the surveillance video, but he met a man in another car in

1    the parking lot and bought marijuana from him.  He left the beer and his cellphone in the man's

2    car.  Ms. Valenzuela testified that petitioner was with her at the time of the incident, and she

3    gave an account of the relevant time period that was consistent with petitioner's testimony.  She

4    gave an earlier statement to an investigator, but she did not contact the police to offer her alibi

5    when she learned that petitioner was arrested.

6                                              **ANALYSIS**

7    **A.    STANDARD OF REVIEW**

8            Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

9    federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

10   pursuant to the judgment of a State court only on the ground that he is in custody in violation of

11   the Constitution or laws or treaties of the United States."  28 U.S.C.§ 2254(a).  The petition may

12   not be granted with respect to any claim adjudicated on the merits in state court unless the state

13   court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an

14   unreasonable application of, clearly established Federal law, as determined by the Supreme

15   Court of the United States; or (2) resulted in a decision that was based on an unreasonable

16   determination of the facts in light of the evidence presented in the State court proceeding."  28

17   U.S.C. § 2254(d).

18           "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

19   arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a

20   question of law or if the state court decides a case differently than [the] Court has on a set of

21   materially indistinguishable facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

22   "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

23   state court identifies the correct governing legal principle from [the] Court's decisions but

24   unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.  "[A] federal

25   habeas court may not issue the writ simply because that court concludes in its independent

26   judgment that the relevant state-court decision applied clearly established federal law

27   erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams*, 529

28   U.S. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask

                                                    3

1   whether the state court's application of clearly established federal law was "objectively

2   unreasonable." *Id*. at 409.

3   **B.   LEGAL CLAIMS**

4       Petitioner claims: (1) evidence was introduced based upon an impermissibly suggestive

5   identification procedure; and (2) hearsay evidence was admitted in violation of the

6   Confrontation Clause.

7       1.   <u>Identification Procedure</u>

8       Petitioner claims that the procedures used by Officers Hyde and Canela to identify

9   petitioner on the surveillance video and in the computer's photograph as the Honda driver were

10   impermissibly suggestive.  As a result, the petition says that admission of this evidence and their

11   in-court identifications of petitioner violated his right to due process.

12       Identification testimony is inadmissible as a violation of due process only if (1) a pretrial

13   encounter is so impermissibly suggestive as to give rise to a very substantial likelihood of

14   irreparable misidentification, and (2) the identification is not sufficiently reliable to outweigh

15   the corrupting effects of the suggestive procedure.  *Van Pilon v. Reed*, 799 F.2d 1332, 1338 (9th

16   Cir. 1986).  An identification procedure is impermissibly suggestive when it emphasizes the

17   focus upon a single individual, thereby increasing the likelihood of misidentification.  *United*

18   *States v. Bagley*, 772 F.2d 482, 493 (9th Cir. 1985).  In determining whether in-court

19   identification testimony is sufficiently reliable, courts consider five factors: (1) the witness'

20   opportunity to view the defendant at the time of the incident; (2) the witness' degree of attention;

21   (3) the accuracy of the witness' prior description; (4) the level of certainty demonstrated by the

22   witness at the time of the identification procedure; and (5) the length of time between the

23   incident and the identification.  *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)

24       The trial court held a hearing on petitioner's motion to exclude evidence of the officers'

25   pre-trial and in-court identifications of petitioner (Resp. Exh. 2 Vol. 4 at 205-39).  Canela

26   testified that he saw petitioner clearly during the chase twice: when petitioner drove the Honda

27   towards them and the patrol car's headlights lit up petitioner's face, and again when he chased

28   petitioner on foot and petitioner turned his head and looked back from the lighted lot.  Officer

4

1    Hyde testified that she also saw petitioner's face when he turned his head from where she was

2    standing and watching about 200 feet away.  Canela described the driver as a bald Hispanic man

3    with a mustache, wearing a black t-shirt and jeans, and Hyde described him as having short hair

4    and a mustache.  They testified they watched surveillance video from Safeway multiple times

5    from many angles, and they both identified a man on the store leaving the store with three

6    bottles of beer as the driver.  Once the image was enlarged, they both immediately confirmed

7    that he was the driver.  They testified that there were three other officers present when they

8    watched the tape.  Another CHP officer (Officer Jessor) arrived at the scene and told Canela that

9    he had spoken to a man named Mario Arias — the same name as the person subscribed to the

10   cellphone found in the Honda — a week earlier about a separate incident.  Jessor showed Canela

11   and Hyde a picture of petitioner on his computer.  Canela knew at the time that the man in the

12   photograph had the same name as the cellphone subscriber, but Hyde did not.  Both officers

13   quickly identified him as both the Honda driver and the man in the surveillance video.  Canela

14   and Hyde both testified at the hearing that their in-court identifications of petitioner as the

15   Honda driver was based only on what they saw during the incident and not on what they saw on

16   surveillance video or in the pohotograph.

17         The California Court of Appeal denied petitioner's claim based on the following

18   reasoning:

19         Under established law, a witness identification procedure will violate the
       due process clause if the state initiates an unduly suggestive procedure "'which
20     suggests in advance of identification by the witness the identity of the person
       suspected by the police.'" (*People v. Ochoa* (1998) 19 Cal.4th 353, 413 (*Ochoa*).)
21     The defendant bears the burden of showing an unreliable identification procedure.
       (*ibid.*) "In order to determine whether the admission of identification evidence
22     violates a defendant's right to due process of law, we consider (1) whether the
       identification procedure was unduly suggestive and unnecessary, and, if so, (2)
23     whether the identification itself was nevertheless reliable under the totality of the
       circumstances, taking into account such factors as the opportunity of the witness to
24     view the suspect at the time of the offense, the witness's degree of attention at the
       time of the offense, the accuracy of his or her prior description of the suspect, the
25     level of certainty demonstrated at the time of the identification, and the lapse of
       time between the offense and the identification. [Citations.]" (*People v.
26     Cunningham* (2001) 25 Cal.4th 926, 989.) If a court concludes that a challenged
       procedure is not unduly suggestive, it need not consider whether the identification
27     was nevertheless reliable. (*Ochoa, supra*, 19 Cal.4th at p. 412.)
       ...
28         First, we point out that when a law enforcement officer views a suspect for
       the purposes of that officer's own investigation, the policy prohibiting unduly

                                                  5

suggestive identification procedures cannot apply because an officer cannot unduly suggest something to him or herself. Although we have found no published case on point from this state, courts from other states have suggested that while the "use of a single photograph would be highly suggestive in a case where the police were working with a victim or potential untrained lay witness to obtain an identification" when an officer is involved he "could not be found through the photo identification process to have impermissibly suggested *to himself* the person" he saw on a particular date. (*State v. Manna* (1988) 130 N.H. 306, 312, 539 A.2d 284, 287.) Similarly, in *Miles v. State* (Ind.App., 2002) 764 N.E.2d 237, an Indiana Court of Appeals noted, "Our supreme court has long held that the extrajudicial exhibition of a single photograph to a victim is an unduly suggestive identification procedure. [Citations.] While we agree with this principle, we find it inapplicable in this case, where [the police officer] is both the investigator and the witness to the offense." (*Id*. at p. 240.)

We hold that Officers Canela and Hyde did not participate in an unduly suggestive pretrial identification procedure. Crucial to our decision is that the "victims" making the identification were experienced, trained law enforcement officers accustomed to investigating cases, as such we find the probability of misidentification highly unlikely. We find support for this conclusion in *U.S. v. Sanders* (8th Cir. 1976) 547 F.2d 1037 (*Sanders*), a case involving a station house "showup."[] In *Sanders*, three of the witnesses who conducted the surveillance of the defendant in a parking lot at a Schnucks Market were agents of the Federal Bureau of Investigation and the fourth was a trained security officer with five years of experience as a security manager at United Parcel Service. (*Id*. at pp. 1039-1040.) The defendant was arrested when he entered a police station to borrow a quarter. (*Id*. at p. 1039.) Each of the four witnesses who made in-court identifications of the defendant had reported to the police station within two hours after the original incident. (*Id*. at p. 1040.) The defendant contended that the in-court identifications should have been excluded because they were tainted by showups which occurred at the police station following his arrest. (*Ibid*.) The Eighth Circuit Court of Appeals disagreed. The court explained, "[t]hese are not inexperienced lay witnesses who might be expected to infer from the stationhouse showup that the arresting officers believed they had the culprit, thereby influencing the witnesses' identification. [Fn. omitted.] The officers were in the course of their investigation; they were looking for [the defendant], whose name and address they already had; and their purpose at the showup was to see whether [the defendant] was in fact the person they saw at Schnucks. Under the totality of circumstances presented by this case, we cannot say that the showup procedure was so manifestly unjust as to make the failure of the District Court to exclude the in-court identifications plain error." (*Id*. at pp. 1040-1041.)

In sum, we conclude that the in-court identification of appellant as the driver of the green Honda was not the result of an unduly suggestive pretrial identification procedure. Accordingly, it is not necessary to consider whether the identification was reliable. (*Ochoa, supra*, 19 Cal.4th at p. 412.)

(Resp. Exh. 6 at 11-13 (footnotes omitted).)

There is no contention or suggestion that the California Court of Appeal's decision was based on an unreasonable factual determination so as to warrant federal habeas relief under 28 U.S.C. 2254(d)(2). The decision was, moreover, not "contrary to" federal law under 28 U.S.C. 2254(d)(1) because the Court of Appeal applied the same standard as federal law for analyzing

6

1   whether admission of identification evidence is constitutional, and because there are no

2   indistinguishable federal cases that reached a different conclusion.  *See Williams*, 529 U.S. at

3   412-13 (explaining "contrary to" standard under 28 U.S.C. 2254(d)(1)).

4          The state court's analysis was also not an "unreasonable application of, clearly

5   established Federal law, as determined by the Supreme Court of the United States" within the

6   meaning of Section 2254(d)(1).  Federal case law prohibiting impermissibly suggestive

7   identification procedures differs from the instant case in one significant respect: the pre-trial

8   identifications in this case were performed by law enforcement officers who had not merely

9   witnessed the crime but as part of their investigation of the crime.  Canela and Hyde viewed the

10  surveillance footage and the photograph on the computer while trying to track down the Honda

11  driver who had fled from them.  They were not lay witnesses who could be subject to undue

12  pressure from law enforcement officials.  Petitioner points to the fact that Hyde and Canela had

13  been in law enforcement for one to two years and other officers were present when they viewed

14  the surveillance video and the photograph on Jessor's computer.  This does not change the fact

15  that they were law enforcement officers conducting an investigation and pursuing a suspect

16  when they identified him.  There is no "clearly established" Supreme Court precedent holding

17  that due process precludes admitting evidence of identifications by law enforcement officers

18  based on procedures they used to identify a suspect whom they witnessed committing a crime.

19         Petitioner concedes that there exists no such precedent, but he argues that the law should

20  make no distinction when the identifier is an investigating officer as opposed to a lay witness

21  (Attachment to Pet. 4). The state court set forth reasons why such a distinction is sound policy,

22  namely that law enforcement officers are not at risk of undue pressure or influence from law

23  enforcement to identify a particular suspect.  Regardless, AEDPA precludes creating new

24  federal law in the context of habeas review insofar Section 2254(d)(1) limits habeas relief to

25  violations of Supreme Court precedent that is already "clearly established."  Petitioner's

26  arguments that such precedent should be created falls outside the limitations of federal habeas

27  review imposed by AEDPA.  As the state courts' denial of this claim was neither contrary to nor

28  an unreasonable application of the federal law that has already been "clearly established" by the

1    United States Supreme Court within the meaning of Section 2254(d)(1), federal habeas relief

2    cannot be granted.

3          2.      Confrontation Clause

4          Petitioner claims that the trial court violated his rights under the Confrontation Clause at

5    his second trial by admitting two statements that Officer Hyde had made to Officer Canela when

6    they were pursuing the Honda.  In both statements Hyde alerted Canela to the fact that the

7    Honda was driving towards their patrol car and was about to hit them, which occurred twice

8    during the chase.  At the first trial, both Canela and Hyde testified about the car chase, including

9    Hyde's making these two statements.  At the second trial, however, Hyde was not available

10   because she was on maternity leave.  Therefore, the prosecution moved in limine to introduce

11   the two statements.  Defense counsel opposed the motion on the grounds that admitting the

12   statements would violate state rules of evidence prohibiting hearsay, and would also violate

13   petitioner's rights under the Confrontation Clause.  The trial court admitted the statements,

14   ruling that they fell under an exception to the hearsay rules for excited utterances, and that they

15   were not prohibited by the Confrontation Clause because they were not "testimonial" hearsay.

16   Hyde's testimony from the first trial was not read into evidence at the second trial.  Rather,

17   Officer Canela described the two statements when he testified at the second trial about the car

18   chase.  Specifically, he testified that Hyde said to him "something to the effect of he's going to

19   ram us," and that she later said "something to the effect of he's coming at us" (Resp. Exh. 2

20   (Reporter's Transcript) at 1712, 1729).  The trial court admonished the jury that it could not

21   consider the statements as evidence of what was in the mind of the Honda driver, but only as

22   evidence of what Hyde saw.

23         On appeal, petitioner argued that admission of Hyde's two statements alerting Canela to

24   the oncoming Honda violated the Confrontation Clause because Hyde recorded her statements

25   in her police report, and in so doing the statements went from being non-testimonial to

26   testimonial hearsay (Resp. Exh. 6 at 17).  The California Court of Appeal did not decide the

27   question of whether the statements were testimonial or not, but rather rejected petitioner's claim

28

                                              8

1   on the ground that any error in admitting the statements was harmless beyond a reasonable

2   doubt under *Chapman v. California*, 386 U.S. 18, 24 (1967) (Resp. Exh. 6 at 17-19).

3        The Confrontation Clause applies to all out-of-court testimonial statements offered for

4   the truth of the matter asserted, i.e., "testimonial hearsay." *See Crawford v. Washington*, 541

5   U.S. 36, 51 (2004). An out-of-court statement to a police officer is testimonial hearsay under

6   *Crawford* when the primary purpose of police taking the statement is to create an out-of-court

7   substitute for trial testimony. *Michigan v. Bryant*, 131 S. Ct. 1143, 1155 (2011). Statements are

8   nontestimonial when made under circumstances objectively indicating that the primary purpose

9   is "to enable police assistance to meet an ongoing emergency." They are testimonial "when the

10  circumstances objectively indicate that there is no such ongoing emergency" and the primary

11  purpose is "to establish or prove past events potentially relevant to later criminal prosecution."

12  *Davis v. Washington*, 547 U.S. 813, 822 (2006).

13       Hyde clearly made both statements to address an ongoing emergency, namely the Honda

14  driving at a high rate of speed toward the patrol car that Canela was driving and in which she

15  was a passenger. As such, the statements are "nontestimonial" under *Crawford*. Petitioner

16  offers no authority supporting this argument that non-testimonial statements are converted into

17  testimonial statements under *Crawford* because a police officer — in this case Hyde —

18  memorializes them in a report. As Hyde's two statements were nontestimonial, their admission

19  did not violate the Confrontation Clause, and the state courts' denial of this claim was neither

20  contrary to nor an unreasonable application of federal law.

21       Furthermore, even if admission of Hyde's statements were error under *Crawford*, the

22  state court reasonably found any error to be harmless. When a trial court admits out-of-court

23  statements in violation of the Confrontation Clause under *Crawford*, the error is subject to a

24  harmless error analysis. *See United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004)

25  (applying harmless error analysis to *Crawford* claim). The California Court of Appeal's

26  harmless error analysis does not warrant federal habeas relief if that analysis was objectively

27  reasonable. *See Davis v. Ayala*, 135 S.Ct. 2187, 2198 (2015).

28

Any error in admitting at the second trial Canela's testimony that Hyde told him on two occasions that the Honda was driving towards them was harmless. Hyde's statements to Canela about the Honda driving towards them were cumulative of Canela's other testimony. Canela testified that he himself also saw the Honda driving towards them on both occasions. There is no indication that Canela's testimony about his own observations about the Honda driving towards them were any less credible than Hyde's statements to him about the same thing. Thus, omitting the evidence of Hyde's two statements to Canela — statements that conveyed the same information that Canela also credibly conveyed in his testimony based upon his own observations — would not have led to an outcome more favorable to petitioner. Petitioner argues that Hyde's statements could have been viewed by the jury as evidence of what the Honda driver was thinking. However, the jury was specifically instructed not to consider Hyde's statements for that purpose, and a jury is presumed to follow a court's limiting instructions. *See Aguilar v. Alexander*, 125 F.3d 815, 820 (9th Cir. 1997) (juries are presumed to follow a court's limiting instructions with respect to the purposes for which evidence is admitted). Under these circumstances, the state courts reasonably concluded that any *Crawford* error arising from the admission of Hyde's statements to Canela during the car chase was harmless error. For this additional reason, federal habeas relief is not warranted on petitioner's Confrontation Clause claim.

//

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, the petition is **DENIED**.

A certificate of appealability will not issue because reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from the United States Court of Appeals.

The clerk shall enter judgment in favor of respondent, and close the file.

**IT IS SO ORDERED.**

Dated: April __11__, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE